ALLEN COMSTOCK, Appellant, v. SAMUEL AMES and others, Executors of Alraz Hayes, deceased.

A fraud upon one does not form a claim on behalf of a stranger to the transaction, not claiming under the party defrauded.

A fraud is an individual and personal thing. It is a cause of complaint only upon whom it is committed, no other person can claim a benefit from it. A recovery by any other person is no defense to a claim by the party defrauded.

*Query.* Does the statement in the last clause, by its terms, exclude a stranger claiming under the party defrauded, and if so, is not the statement too broad? The two clauses should be taken together, and the whole be modified by the exception stated in the first.

HUNT, J. This was an action for fraud in the sale of certain lots in "Macomb's purchase," in the county of Franklin. The plaintiff, on the trial before the referee, recovered the amount of $5,360 as damages. On appeal to the General Term of the fourth district, the judgment in favor of the plaintiff was reversed, and a new trial ordered. The plaintiff now appeals to this court. The facts are stated in the opinion of the court.

The material facts in this case, as they are shown by the report of the referee, are the following:

On the 13th day of January, 1853, Alraz Hayes, now deceased, entered into a contract with the plaintiff, by which, in consideration of $131.76 agreed to be paid to him, he contracted to convey to the plaintiff, by quitclaim deed, lots Nos. 80, 99 and 100 in Macomb's purchase, Franklin county. Each of said lots contain about 344 acres, and had been conveyed by the deceased in 1842 to W. and A. Ricketson. The taxes for 1844 remaining unpaid, these lots were advertised for sale by the comptroller in 1848, and were sold in that year to satisfy said taxes. The deceased agreed with the Ricketsons that he would pay these taxes, or if the lands should be sold, that he would bid them off in the name of the Ricketsons. The deceased attended the comptroller's sale and bid off these lots in his own name, and on the 11th

day of August, 1851, received a comptroller's deed of the same. The deceased assured the Ricketsons that he had bid off these lots in their name, concealed the fact of the bid in his own name, and of the deed thereof from the comptroller to himself, and therein perpetrated a gross fraud upon the Ricketsons.

There are other facts showing the fraudulent character of the transaction, as between the deceased and the Ricketsons, and tending also to show that the title of the deceased under the comptroller's deed was imperfect. Upon these facts the referee finds as conclusions of law that the title of the deceased under the comptroller's deed of August 11, 1851, was avoided by his fraud upon the Ricketsons. The referee does not find that any fraudulent representations were made by the deceased to the plaintiff, nor, indeed, that any representations whatever were made, except as he finds that the deceased made a contract of sale in writing, in which he recited that the comptroller had conveyed these lots to him, and that the time for redeeming the same had expired before the conveyance to him by the comptroller, and in which he also recites that "one of said lots was unoccupied and the title to the same was therefore perfect, and that notice had been served upon the occupants of the others which were supposed to be resident lands." The referee does not find that these recitals were fraudulent, nor does he find that they were made to induce the plaintiff to purchase, or that the plaintiff relied upon them in making the purchase. No fact is found by the referee showing that the Ricketsons have ever taken any measures to avoid the comptroller's deed of August 11, 1851, to the deceased, although more than nine years had elapsed between the date of the deed and the date of his report; nor does his report show that the Ricketsons have ever made objection to the title acquired thereunder by the deceased, or that they are not content with the existing state of things.

It is not found that the one lot was not unoccupied, and while it is stated that notices had not been served upon the occupants of the others, it is not stated that any loss or

damage had accrued from such omission to the plaintiff. We are not at liberty to go behind the report of the referee and examine the testimony of the witnesses to ascertain the facts upon which our judgment is to be based. I may say, however, that I have looked over all the evidence in the case, and I do not find that the referee would have been justified in reporting otherwise than he has done in regard to the facts to which I have referred as not having been found by him. There is no testimony that would have sustained the finding that the representations were fraudulent, or that the Ricketsons had taken measures to avoid the deed to the deceased, although it appears that they were aware of its existence several years before the trial.

The decision was apparently made by the referee as if the question had been presented to him in a proceeding by the Ricketsons to avoid the comptroller's deed. We do not assume to decide whether the Ricketsons can sustain an action for that purpose. It is not before us, and there are many and grave questions connected with it which should be carefully considered before reaching a conclusion on that question.

The present question is, however, entirely different. It does not follow if Ricketson could maintain an action for fraud that the plaintiff can do so. A fraud upon one does not form a claim on behalf of a stranger to the transaction, not claiming under the party defrauded. A fraud is an individual and personal thing. It is a cause of complaint to the person only, upon whom it is committed. No other person can claim a benefit from it. A recovery by any other person is no defense to a claim by the party defrauded. The estate of the deceased in the present case remains liable to the Ricketsons for the alleged fraud, not discharged at all by the large recovery of the plaintiff against him for the same fraud.

So, if Ricketson subsequently assented to the transaction between himself and the deceased, the title of the deceased would thereupon become good as against every one. This results necessarily from the position of the parties. The

deceased obtained a legal title to the lands in question by the comptroller's deed of August, 1853. The confidence of Ricketson having been abused by the deceased, he would under certain circumstances be justified in attacking this title. But, until so attacked, the legal title is supreme. Should the injured party assent to and ratify the original transaction, the abandonment of his equitable claim removes all doubt from the legal title, and it is as if suspicion or embarrassment had never attached to it. (*Stevenson* v. *Newhawn,* 16 Eng. L. and Eq. 401, 408.)

It is said in answer, "that judgments are not reversed in this court, because the facts found by the referee do not sustain them, but that they will be sustained unless it appear that some rule of law has been violated. (22 N. Y. 324; 27 id. 624; 30 id. 211.)

The papers before us show that several reports have been made by the referee in this action, and that in September, 1859, an order was made by the General Term of the fourth district, striking out all reports supplementary to the original one, and directing the referee to make a further report, in which he should state in a plain and concise manner the facts found by him. In response to this order the referee makes a new report, in which he says, "I hereby report the facts found by me in this case," etc. We cannot assume the existence of facts in opposition to those found by the referee for any purpose. But when certain facts are expressly found, and certain other facts are studiously omitted to be found, and the existence of the latter are necessary to sustain a judgment, it is reasonably clear that a rule of law has been violated in rendering the judgment. Such is the present case. In neither of the reports contained in the case is there a finding of fraud on the part of the deceased, except in obtaining the comptroller's deed of 1851, with which transaction the presen* plaintiff is in no way connected, and from which he can derive no benefit; nor is there any finding that the recitals were intended to induce a purchase, or that the plaintiff relied upon their truth.

The contract of January 13, 1853, between the plaintiff and the deceased contained a recital in these words: "No. 80 I know to be unoccupied or non-resident land, the title to this lot is therefore perfect." The contract had just previously recited that the deceased had bid off these lots at a comptroller's sale for taxes, and that the time allowed by law for redemption had expired. If all these things as recited did concur, the title as a legal proposition may be said to have been perfect, and was not affected by an equity existing in favor of the Ricketsons. This is all the falsity or error that is pretended to have existed in relation to lot 80, and on account of which the referee gives a portion of the damages for which he makes his report. If this is error, as I think it is, the report must be set aside for this reason, although the referee was right as to the other two lots.

Bearing in mind that this is an action for fraud, I think the appellant is no better off as to the other two lots than as to No. 80. The deceased did not covenant to warrant the title, that was to be at the risk of the vendee, except so far as the acts of the deceased may have affected it.

The statement as to the service of notice upon the occupants of these lots is not guarantied by the deceased, nor does he presume to have precise knowledge, as he did that lot 80 was unoccupied; the contract simply recites, that, notices having been served, and the time having expired, etc. The simple fact that notices had not been served, would not sustain an action for fraud in making this statement. Knowledge of its falsity, intentional concealment, or some similar fact tending to show fraud, must be proved, together with the plaintiff's reliance upon its truth. If the deceased had been in error, the recital would have been false in fact, but it would not have been fraudulently so, and if any remedy existed, it would have been of another character. If the plaintiff had been aware of its falsity, or had suffered no damages therefrom, no action could have been sustained. It is evident, upon an examination of all the facts reported by the referee, that the incorrect judgment in the case does not arise from a defective statement of facts, but from an erro-

neous application, in favor of the plaintiff, of that principle of law which would give the Ricketsons a supposed equitable defense, if the action to recover the lands had been brought against them. There is, therefore, the violation of the rules of law required by the authorities I have cited, and the report cannot be sustained. The order of the General Term should be affirmed, and under the stipulation judgment absolute must be rendered in favor of the defendants.

All the judges concurring,

Judgment affirmed.